[No. A032400. First Dist., Div. Five. Nov. 21, 1986.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT LUIS EPPERSON, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Thomas A. Brady and Eugene W. Kaster, Deputy Attorneys General, for Plaintiff and Appellant.

James R. Jenner, Public Defender, and Scott Spear, Assistant Public Defender, for Defendant and Respondent.

## OPINION

LOW, P. J.—We hold that no Fourth Amendment rights are implicated when a defendant gives contraband to a police officer because of his "guilty conscience" and not because of any conduct or show of authority by the officer.

Defendant Robert Epperson was arrested and charged with possession of heroin for sale (Health & Saf. Code, § 11351). Defendant's motion to suppress the contraband (Pen. Code, § 1538.5) was granted and the case was dismissed. The People appeal from the order granting dismissal (Pen. Code, § 1238), alleging that the trial court applied the incorrect standard of law. We reverse.

Alameda police officers, Sergeant McGrath and Officer Dwyer, went to the California Lodge hotel to conduct a followup investigation of the death of a resident. On their way to interview the manager of the lodge, Sergeant McGrath saw defendant coming up the stairway. McGrath had known defendant for several years, including being present on one occasion when

defendant was served with a search warrant and arrested in 1984. After exchanging greetings, McGrath told defendant that he would like to talk to defendant for a few moments and would defendant mind waiting while he went to see the manager. Defendant replied that it would be no problem at all. Defendant remained in the hallway with Officer Dwyer. While waiting, Officer Dwyer asked defendant how he injured his jaw, which was visibly swollen. During the conversation, defendant was leaning against a wall with both hands in his pockets. Unexpectedly, he pulled an unmarked vial from his right pocket, looked at it and quickly placed it in his left pocket. Officer Dwyer observed this and asked defendant what it was. Defendant said nothing; he reached into his left pants pocket and pulled out two vials which he handed to Officer Dwyer. Upon inspection, Officer Dwyer concluded, because these other vials had prescription labels on them, that these were different vials. Officer Dwyer then stated, "That's not the vial you removed from your pocket." Defendant paused, reached into his left pants pocket and pulled out a vial with his left hand and said to Officer Dwyer, "It's heroin. Take me to jail."

Officer Dwyer testified he was curious, but did not form any opinion whether the vial contained drugs. At no time did Officer Dwyer order defendant to take out the vial, nor did he state that defendant was not free to leave. Defendant was not read his *Miranda* rights before he produced the vial and made the incriminating statement. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

The People contend that the trial court used a "focus of suspicion" test in determining whether *Miranda* warnings were required, whereas the proper rule of law is whether a suspect reasonably believes he has been taken into custody or otherwise deprived of his freedom in any significant way. (*Beckwith* v. *United States* (1976) 425 U.S. 341, 344 [48 L.Ed.2d 1, 6, 96 S.Ct. 1612].) The People note that, since the trial court expressly found no detention, a fortiori, there is no custody issue at all for *Miranda* purposes.

I

It was the suppression of the vial, a Fourth Amendment concern, and not defendant's contemporaneous statement, a Fifth Amendment issue, that caused the trial court to dismiss the information. The Fourth and Fifth Amendments protect different rights. The Fifth Amendment protects against compulsory self-incriminating statements and protects the fairness of the trial itself. (See *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 240 [36 L.Ed.2d 854, 870, 93 S.Ct. 2041].) The Fourth Amendment protects the personal privacy of the individual and the right to be let alone. (At p. 242 [36 L.Ed.2d at pp. 871-872].) ■ A consent to search is not a Fifth

Amendment waiver. The fact that a search leads to incriminating evidence does not make the consent testimonial, the threshold question under Fifth Amendment analysis. (*People* v. *James* (1977) 19 Cal.3d 99, 114-115 [137 Cal.Rptr. 447, 561 P.2d 1135]; *People* v. *Nelson* (1985) 166 Cal.App.3d 1209, 1214 [212 Cal.Rptr. 799].)

*Miranda* focused on the inherently coercive nature of the custodial interrogation. (See *Berkemer* v. *McCarty* (1984) 468 U.S. 420, 428 [82 L.Ed.2d 317, 327, 104 S.Ct. 3138]; *Schneckloth* v. *Bustamonte, supra,* 412 U.S. at p. 240 [36 L.Ed.2d at p. 870].) The safeguards prescribed in *Miranda* were designed to ensure that police do not coerce or trick suspects into confessing and to relieve the ""'"inherently compelling pressures"'" generated by the custodial setting itself." (*Berkemer* v. *McCarty, supra,* at p. 433 [82 L.Ed.2d at p. 330].) The matter sought to be suppressed here was the vial, and it was not a statement nor the fruit thereof. Defendant voluntarily took the vial out of his pocket in response to the officer's questions. This case raises Fourth Amendment concerns and not defendant's right to be free from self-incrimination under the Fifth Amendment.

█ Even assuming, arguendo, this defendant's Fifth Amendment rights are implicated, we conclude that the officer did not have to instruct defendant on his *Miranda* rights. The duty to give the *Miranda* warnings applies whenever "'a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way*' [citations]." (*Berkemer* v. *McCarty, supra,* 468 U.S. at p. 435 [82 L.Ed.2d at p. 332]; *California* v. *Beheler* (1983) 463 U.S. 1121, 1124 [77 L.Ed.2d 1275, 1278-1279, 103 S.Ct. 3517].) It is not triggered by the government's suspicion at the time of questioning the suspect. (See *Beckwith* v. *United States, supra,* 425 U.S. at pp. 345-347 [48 L.Ed.2d at pp. 6-8].) At the time Officer Dwyer first encountered defendant, he was not the subject of any investigation; the defendant voluntarily agreed to answer the officer's questions about the death of the California Lodge resident, and the questioning was to be brief and occurred in a noncoercive atmosphere. (See *Berkemer* v. *McCarty, supra,* at pp. 437-440 [82 L.Ed.2d at pp. 333-335].) Defendant was free to leave as the officer used no physical force or implied threats to detain defendant. This was a chance encounter, voluntarily consented to by defendant, and did not constitute a custodial detention. That the officer may have suspected the vial to contain contraband did not make the encounter "custodial" in nature. *Miranda* warnings are not required "'simply because the . . . questioned person is one whom the police suspect.' [Citation.]" (*California* v. *Beheler, supra,* 463 U.S. at p. 1125 [77 L.Ed.2d at pp. 1279-1280].) Viewing the totality of the circumstances, the *Miranda* warnings were not required and the decision to give up the vial was voluntarily made.

## II

This case should be considered under the Fourth Amendment; the central question being whether defendant voluntarily relinquished the vial or did so under compulsion of police authority. Only when a defendant's freedom of movement is restrained has there been a "seizure" invoking constitutional safeguards. (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 553 [64 L.Ed.2d 497, 508-509, 100 S.Ct. 1870].) A person has been "seized" for Fourth Amendment purposes when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (At p. 554 [64 L.Ed.2d at p. 509], fn. omitted.) There was nothing in the officer's attitude or the nature of the inquiry which would indicate to a reasonable person that compliance with the officer's request might be compelled or that defendant was not free to leave. The conversation occurred in a public place in the California Lodge and there was no show of force or threats, express or implied. "[I]t [is not] enough to establish a seizure that the person asking the questions was a law enforcement official. [Citations.]" (At p. 555 [64 L.Ed.2d at p. 510].) Not every street encounter between an officer and a citizen is a seizure triggering Fourth Amendment protections. Here, the totality of the circumstances reveals that defendant voluntarily agreed to cooperate with the officer's independent investigation. That the officer became suspicious of the vial defendant transferred to another pocket is not enough to establish a seizure or to require *Miranda* warnings before questioning him further.

Moreover, giving *Miranda* warnings is not a prerequisite to demonstrating a voluntary consent to search. (*Schneckloth* v. *Bustamonte, supra,* 412 U.S. at pp. 232-233 [36 L.Ed.2d at p. 866]; *People* v. *Ratliff* (1986) 41 Cal.3d 675, 686 [224 Cal.Rptr. 705, 715 P.2d. 665]; *People* v. *James, supra,* 19 Cal.3d at pp. 114-115.) The absence of the warning is just one factor to be balanced along with other circumstances.

In *Ratliff*, defendant was a suspect in a murder investigation. Police officers arrived at his house and entered with his father's permission. After initially drawing their weapons, the officers handcuffed defendant in his own living room and asked to search his car. No *Miranda* warnings were given. He assented, and our Supreme Court concluded that there was sufficient evidence to support the trial court's finding that the consent to search was voluntary. (*People* v. *Ratliff, supra,* 41 Cal.3d at p. 687.) The encounter with Officer Dwyer does not begin to approach the more serious show of force in *Ratliff*. Defendant was not under any official compulsion to relinquish the vial and we conclude that he did so voluntarily. He has no cause to complain.

The order suppressing the vial is reversed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied December 11, 1986.