[No. D005398. Fourth Dist., Div. One. Sept. 25, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO CRUZ SANCHEZ, Defendant and Appellant.

COUNSEL

Peter W. Cowan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Pat Zaharopoulos and Jay M. Bloom, Supervising Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WORK, Acting P. J.**—Mario Cruz Sanchez appeals a judgment convicting him of possession of a controlled substance (heroin) for sale (Health & Saf. Code, § 11351). After his motion to suppress evidence (Pen. Code, § 1538.5) was denied, he pled guilty. His sole contention is the trial court erred in denying his suppression motion, because the detention, search and seizure of the bindle of heroin by the narcotics officer were illegal. For the reasons which follow, we conclude Sanchez has failed to establish the underlying intent of the Narcotics Task Force (NTF) in pairing the Border Patrol agent with the police officer was to circumvent the protections of the Fourth Amendment, and further their contact with Sanchez simply constituted a consensual encounter not triggering Fourth Amendment scrutiny. Accordingly, we affirm the judgment.

FACTUAL BACKGROUND

On July 28, 1986, Roland Richardson was a United States Border Patrol agent assigned to work with the NTF agents in Imperial County and specifically Hector Rios, a Calexico police officer. Richardson was part of a program within which the Border Patrol allocated a position to the NTF to help combat aliens involved in narcotic trafficking in Imperial County. He regularly worked with the NTF officers; however, his salary was paid by the Border Patrol just as agents from other law enforcement branches were paid

by their agencies when working with the NTF. Moreover, the participation of the Border Patrol in the NTF is designed to promote not only cooperation among the agencies, but also the NTF's primary purpose of confronting Imperial County's street narcotics problem. In his NTF assignment, Richardson participated in narcotics raids, arrested suspects, and executed search warrants.

One afternoon Richardson and Rios, dressed in plain clothes and in an unmarked vehicle, saw Sanchez walking with another individual westbound on 7th Street in Calexico, approximately one-half mile from the border. Richardson requested Rios to pull over for the express purpose to inquire regarding Sanchez's status in the United States. Because Sanchez had a soiled and unkempt appearance, Richardson suspected him to be an illegal alien; for he had apprehended other illegal aliens in the area who used the same route apparently being traveled by Sanchez from the border. Richardson advised Sanchez he was a Border Patrol agent and asked where he was born and whether he had any documents on his person. Sanchez replied he was from Mexicali, Mexico and had no documents on him. Richardson detained him under the authority of the Immigration Nationality Act (INA). Meanwhile, Rios, who had already requested backup, noticed defendant had numerous injection "tracks" on both arms, droopy eyelids, slurred speech and constricted pupils, suggesting he was under the influence of a controlled substance. He then arrested and searched Sanchez, finding a bindle of heroin.

## THE PROPRIETY OF THE STOP, DETENTION AND SEARCH

Sanchez contends the police officers serving on the NTF cannot exceed constitutional limitations on their powers simply because they are paired with Border Patrol agents who may have greater latitude in their investigative operations, permitting interrogations of suspected aliens without a warrant or independent evidence they are illegally in the United States, free of the stringent standards governing investigative stops or detentions by law enforcement officers set forth in *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957]. Thus, he argues that pairing an NTF officer with a Border Patrol agent does not relieve the NTF officer of the probable cause strictures the Fourth Amendment places on detentions and searches. He urges this is not a case of one law enforcement agency's employing tools available to it, but rather one where a police officer is using the Border Patrol to circumvent constitutional requirements of probable cause to detain based on an objectively reasonable belief the person detained is involved in criminal activity. Given the different underlying purposes of the

Border Patrol and the NTF, Sanchez asserts the latter cannot hide behind the former to avoid the constitutional guidelines under which it is required to exist.[1] Accordingly, he asserts the detention, search and seizure of the evidence by the narcotics officer were illegal and all evidence must be suppressed.[2]

■ Preliminarily, absent any evidence the underlying intent of the NTF pairing a Border Patrol agent with a participating law enforcement officer was to circumvent the prohibitions of the Fourth Amendment, we are compelled to reject Sanchez's contention the pairing was so designed to give the police officer the same latitude as the Border Patrol agent regarding detentions and searches. Indeed, "[i]t is generally permissible for different law enforcement agencies to cooperate to ensure obedience to the law." (*United States* v. *Troise* (9th Cir. 1986) 796 F.2d 310, 312.) In any event, the encounter, arrest and search here were constitutional.[3]

■ Section 1357 of Title 8 of the United States Code authorizes the officers of the Immigration and Naturalization Service (INS) to interrogate any person "believed to be an alien as to his right to be or to remain in the United States." (8 U.S.C. § 1357(a)(1).) Because this authority is not unlimited and is subject to the search and seizure restraints of the Fourth Amendment, the INS is prohibited from detaining individuals for questioning about their citizenship absent a reasonable suspicion they may be aliens. (*United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 884 [45 L.Ed.2d 607, 618, 95 S.Ct. 2574]; *United States* v. *Rodriguez-Franco* (11th Cir. 1985) 749 F.2d 1555, 1559.) However, "a request for identification by the INS does not, by itself, amount to a detention protected by the fourth amendment '[u]nless the circumstances of the encounter [were] so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded.'" (*United States* v. *Rodriguez-Franco, supra,* 749 F.2d at p. 1559, quoting *INS* v. *Delgado* (1984) 466 U.S. 210, 216

---

[1] Sanchez analogizes that just as an officer cannot employ a private citizen to avoid constitutional prohibitions, a narcotics officer cannot hide behind the authority of a border patrol agent to gain evidence to which he would not have otherwise been entitled.

[2] The Attorney General mischaracterizes Sanchez's contention by describing his claim as that the Border Patrol agent lost his authority to stop and interrogate persons suspected of being illegal aliens upon becoming a member of the Imperial County NTF. Rather, as already explained, Sanchez does not challenge the authority of the Border Patrol agent to stop and interrogate aliens suspected of being illegally in the United States, but rather the police officer's use of the Border Patrol agent's stop to keenly observe him and gain sufficient cause to take him into custody and search him.

[3] We are mindful that with the enactment of Proposition 8, we review the officers' conduct in the light of federal case precedent construing the United States Constitution, denying suppression of evidence where admissible under the federal Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 897-890 [210 Cal.Rptr. 631, 694 P.2d 744].)

[80 L.Ed.2d 247, 255, 104 S.Ct. 1758]; *United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870].) ■ Consequently, "[n]ot every encounter between law enforcement officers and an individual constitutes a seizure within the meaning of the fourth amendment." (*United States* v. *Alvarez-Sanchez* (11th Cir. 1985) 774 F.2d 1036, 1040; *INS* v. *Delgado, supra,* 466 U.S. at p. 216 [80 L.Ed.2d at p. 255]; · *United States* v. *Espinosa-Guerra* (11th Cir. 1986) 805 F.2d 1502, 1506.) In fact, "[a] police officer may approach an individual in a public place, identify himself as a law enforcement officer, and, in a non-coercive manner, ask the individual a few questions, without converting the encounter into a seizure." (*United States* v. *Espinosa-Guerra, supra,* 805 F.2d at p. 1507; *Florida* v. *Rodriguez* (1984) 469 U.S. 1, 5-6 [83 L.Ed.2d 165, 170-171]; see *Florida* v. *Royer* (1983) 460 U.S. 491, 497 [75 L.Ed.2d 229, 236, 103 S.Ct. 1319]; see also *United States v. Brown* (11th Cir. 1984) 731 F.2d 1491, 1493, modified, 743 F.2d 1505.)

■ Applying the foregoing rules, Agent Richardson's encounter with Sanchez, involving his identification as a Border Patrol agent and questioning Sanchez as to his place of birth and whether he had any documents on him, did not amount to a detention protected by the Fourth Amendment. The record lacks any indication their dialogue was coercive or that Sanchez reasonably believed he was restrained and not free to go. (See *United States* v. *Espinosa-Guerra, supra,* 805 F.2d at p. 1507.) Not only was there nothing apparent in Richardson's attitude or the nature of his inquiry to reflect compulsory compliance, but the incident occurred on a public street with no show of force or threats, express or implied. (See *People* v. *Epperson* (1986) 187 Cal.App.3d 115, 120 [232 Cal.Rptr. 16].) Consequently, in light of the totality of circumstances reflecting the consensual character of this encounter, Fourth Amendment scrutiny is not required and thus the People need not show a reasonable, articulable suspicion defendant had committed or was about to commit a crime (*id.* at p. 1506), or was an alien illegally in this country (*INS* v. *Delgado, supra,* 466 U.S. at p. 219 [80 L.Ed.2d at p. 257]).

■ Similarly, Officer Rios was likewise entitled to participate in this citizen-police encounter. Following federal case precedent, our Supreme Court has recognized consensual encounters between police and citizens result in no restraint on an individual's liberty and thus no seizure within the meaning of the Fourth Amendment even when initiated by law enforcement without objective justification. (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325]; see *Florida* v. *Royer, supra,* 460 U.S. 491; *People* v. *Franklin* (1987) 192 Cal.App.3d 935, 939 [237 Cal.Rptr. 840]; *People* v. *Epperson, supra,* 187 Cal.App.3d at p. 120.)

In fact, the court in *Wilson* v. *Superior Court, supra,* 34 Cal.3d at page 790, held the detective did not detain Wilson merely by approaching him, identifying himself as a police officer and asking him whether he might have a minute of his time. The courts in this state have consistently followed *Florida* v. *Royer, supra,* 460 U.S. at pages 497-498 [75 L.Ed.2d at p. 236], which held: ". . . law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen . . . . Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. [Citation.] The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Citation.] He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. [Citation.] If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." (*Wilson* v. *Superior Court, supra,* 34 Cal.3d at p. 789; *People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1124 [236 Cal.Rptr. 840]; *People* v. *Profit* (1986) 183 Cal.App.3d 849, 876-877 [229 Cal.Rptr. 148]; *People* v. *Gonzales* (1985) 164 Cal.App.3d 1194 1196-1197 [211 Cal.Rptr. 74].)[4]

We discern no difference in the governing legal principles applicable here. Rios could have approached Sanchez first in the same manner Richardson did.[5] A fortiori, Rios was entitled to participate in this citizen-police encounter in the manner he in fact did. The consensual encounter did not ripen into a seizure until Rios made the plain-sight observations concerning Sanchez's demeanor from a location the officer had a right to be which clearly furnished probable cause to arrest Sanchez for being under the influence of a controlled substance. (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992].) Upon his lawful custodial arrest, the contemporaneous search without a warrant was entirely proper.

---

[4] In other words, the essence of a consensual encounter is its voluntary nature where a citizen, under no compulsion to respond or remain, permits official intrusion upon basic interests protected by the Constitution. (*People* v. *Franklin, supra,* 192 Cal.App.3d at pp. 940-941.) Thus, casting aside the officer's state of mind, reasonable citizen submission to a show of authority evidences the lack of voluntariness or consent. (*Id.* at p. 941.). Further, where a consensual encounter has been found and police have made inquiries of defendant, it is not the nature of the question posed to the defendant, but rather the manner and mode in which the encounter was made and the inquiry put to the citizen which guides the court in determining whether compliance was voluntary. (*Ibid.*)

[5] Federal law does not preclude local enforcement of the INA. (*Gonzales* v. *City of Peoria* (9th Cir. 1983) 722 F.2d 468, 474-475.)

(*New York* v. *Belton* (1981) 453 U.S. 454, 458 [69 L.Ed.2d 768, 773-774, 101 S.Ct. 2860].)

### DISPOSITION

Judgment affirmed.

Todd, J., and Benke, J., concurred.