Filed 9/30/15  P. v. Benitez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066655 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD257101) |
| EDWIN URIEL BENITEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Christen Sommerville, Deputy Attorneys General, for Plaintiff and Respondent.

Edwin Uriel Benitez pleaded guilty to possessing methamphetamine.  (Health & Saf. Code, § 11377, subd. (a).)  The trial court suspended imposition of sentence and

placed Benitez on probation for three years. Benitez appeals, contending the court erroneously denied his motion to suppress evidence under Penal Code section 1538.5.[1] He also argues section 1170.18 (Proposition 47) should apply retroactively to reduce his felony conviction to a misdemeanor.[2] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of July 5, 2014, San Diego Police Officer Adam Schrom and his partner were driving a patrol car in the Logan Heights neighborhood of San Diego. They drove past Benitez and another man, who were standing together next to a legally parked car across the street from Benitez's home. The two men looked up when they saw the patrol car and quickly separated. Although Schrom did not see any exchange of money or drugs, he believed a drug transaction had occurred. He approached Benitez while his partner spoke to the other man.

At the suppression motion hearing on September 3, 2014, Officer Schrom testified he was trained and experienced in narcotics-related arrests. When he drove by Benitez and his companion, he noticed they looked shocked and quickly separated. Schrom believed a narcotics transaction had just occurred. When asked why, Schrom said it was difficult to explain, but people reacted differently upon seeing a patrol car if they were doing something wrong.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] At oral argument, appellant's counsel advised this issue is moot because appellant filed a Proposition 47 petition with the superior court and the court granted that petition.

Officer Schrom left the patrol car and approached Benitez, who was walking across the street. Benitez was calm. Schrom said he "kind of began small talk with [Benitez]." He asked Benitez if he was engaged in a drug transaction, and Benitez said no. When asked for identification, Benitez said he did not have any because he had been recently released from jail, but provided his name, address and birth date. Schrom asked Benitez if he was on probation and Benitez said yes.

As part of his narcotics investigation, Officer Schrom testified he intended to search Benitez's home if he had a Fourth Amendment waiver as a condition of probation. Two other police officers arrived to assist with that search. Schrom advised Benitez he was going to pat him down for weapons. He checked Benitez's back waistband, handcuffed his hands behind his back, and patted the rest of his waistband and side pockets. Schrom did not find any weapons or contraband during the pat-down search.

At that point, Officer Schrom had Benitez sit down on the front bumper of the patrol car while another police officer ran a records check to verify Benitez's identity and determine whether police could lawfully search his home pursuant to a Fourth Amendment waiver. In plain view (a factual conclusion defendant does not challenge), that officer noticed a bulge in the inner part of Benitez's right sock and pointed it out to Schrom. Based on its size and shape, Schrom believed the bulge contained drugs. He searched Benitez's sock and found a bindle of methamphetamine. Benitez did not have a Fourth Amendment waiver as a condition of probation and the police officers did not search his home. He was arrested and charged with a felony count of possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).)

3

Officer Schrom testified he conducted the pat down for weapons because Benitez said he had been released from jail, he was on probation, he did not have any identification, and he was in a known gang area. Schrom knew from training and experience gang members and people involved in the narcotics trade carry weapons and other items that can be used as weapons. Schrom also testified he conducted the pat-down search "kind of while we're talking."

The court said the testimony was "a little confusing, but I think I pretty much have it." The court asked Schrom, "Before you patted the defendant down, you were having small talk with him?" Schrom replied, "Yes." The court asked, ". . . before you patted him down, before you handcuffed him, he volunteered to you that he was on probation, just gotten out of jail?" Schrom said, "Yes."[3]

In closing argument the defense attorney insisted the evidence showed that Officer Schrom did not learn Benitez was on probation until after the officer handcuffed him. The court asked Schrom to clarify what happened when he first contacted Benitez. Schrom replied, "That's what I asked him, what his name is. We began to kind of talk. Said he didn't have ID. He was calm. Nobody was yelling. Nobody was doing anything. It was just the two of us talk[ing] normally. [¶] And he said that he just got out of jail. He didn't do anything wrong, he doesn't have any warrants or anything like that, and he is on

---

[3]    In a footnote, defendant states the court's questions were leading and suggestive and argues this court should disregard Officer Schrom's responses to the suggestive questioning. We find no error in the court asking questions to clarify its understanding of the timeline. Further, after hearing argument on the timeline, the court again asked Schrom to clarify the timeline, as detailed in the next paragraph in the opinion.

probation. And based on all the other things, that's when I told him I was going to pat him down for weapons. I checked his rear waistband, handcuffed him, and finished the [pat down]."

The court said the officer only had a hunch that narcotics activity was occurring but noted that good officers act on their hunches. The court found that the initial contact between the officer and Benitez was consensual. The officer did not tell Benitez he could not leave. Benitez did not say he wanted to leave. Instead, he engaged in a discussion with the officer. The crucial point in the encounter occurred when Benitez said he recently had been released from jail and was on probation. This suggested he had a Fourth Amendment waiver. He was detained while the officers checked whether he was subject to a Fourth Amendment waiver. The officers then discovered the narcotics. The court found that the officer did not violate Benitez's Fourth Amendment rights and denied the motion to suppress.

On September 16, 2014, Benitez pleaded guilty to possessing methamphetamine. He was sentenced to probation and ordered to complete a substance abuse treatment program.

DISCUSSION

I

*Motion To Suppress*

Benitez contends the court erroneously denied his motion to suppress evidence. He maintains the initial detention violated his Fourth Amendment rights because the officer did not have specific articulable facts to believe that a narcotics transaction had occurred.

5

Benitez argues the pat-down search was not justified because the officer did not have a reasonable belief he was armed and dangerous. He further argues there was no justifiable reason to prolong his detention after the officer frisked him and did not find any weapons or contraband.

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " (*United States v. Jones* (2012) 132 S.Ct. 945, 946.) Generally, when evidence has been obtained in violation of a defendant's Fourth Amendment rights, the exclusionary rule precludes a prosecutor in a criminal proceeding from using that evidence against the defendant. (*Illinois v. Krull* (1987) 480 U.S. 340, 347.)

When reviewing a motion to suppress evidence on the ground of illegal search and seizure, we first determine whether the trial court's factual findings, express or implied, are supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) We then exercise our independent judgment to determine whether, on the facts found by the court, the search or seizure was reasonable under the Fourth Amendment. (*Ibid.*) It is our responsibility to measure the facts as found by the court against the constitutional standard of reasonableness. (*People v. Leyba* (1981) 29 Cal.3d 591, 597.)

A

*There Is Substantial Evidence To Support the Trial Court's Finding the*
*Initial Contact Was Consensual*

"The Fourth Amendment prohibits only those searches and seizures that are unreasonable." (*People v. Superior Court* (*Chapman*) (2012) 204 Cal.App.4th 1004, 1011,

6

citing *Florida v. Jimeno* (1991) 500 U.S. 248, 250, and *Brigham City v. Stuart* (2006) 547 U.S. 398, 403.) Generally, "a search conducted without a warrant is per se unreasonable under the Fourth Amendment." (*Chapman, supra*, at p. 1011.) However, a Fourth Amendment seizure does not occur "simply because a police officer approaches an individual and asks a few questions." (*Florida v. Bostick* (1991) 501 U.S. 429, 434.) "[M]ere police questioning does not constitute a seizure." (*Ibid.*) As long as a reasonable person would feel free to leave, the encounter is consensual and "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." (*Ibid.*)

A seizure occurs "only when the officer, by means of physical force or show of authority, has in some way restrained" a person's liberty. (*Terry v. Ohio* (1968) 392 U.S. 1, 20, fn. 6*.*) "Consequently, '[not] every encounter between law enforcement officers and an individual constitutes a seizure within the meaning of the fourth amendment.' [Citations.] In fact, '[a] police officer may approach an individual in a public place, identify himself as a law enforcement officer, and, in a non-coercive manner, ask the individual a few questions, without converting the encounter into a seizure.' " (*People v. Sanchez* (1987) 195 Cal.App.3d 42, 47 (*Sanchez*).)

The trial court found that Benitez's initial encounter with Officer Schrom was consensual. There is substantial evidence to support the court's finding. This case is similar to *Sanchez* in which this court held that a border patrol agent did not detain the defendant in violation of the Fourth Amendment by approaching the defendant, identifying himself and asking the defendant about his birthplace. (*Sanchez, supra*, 195 Cal.App.3d at p. 45.) In *Sanchez*, there was nothing apparent in the agent's attitude or initial questions

7

indicating compulsory compliance. The incident occurred in public without any express or implied force or threats. (*Id.* at p. 47.) This court held that in view of the totality of circumstances reflecting the consensual character of the encounter, Fourth Amendment scrutiny was not required and the People did not need to show a reasonable, articulable suspicion that defendant had committed or was about to commit a crime. (*Ibid.*)

Here, the record shows Officer Schrom approached Benitez on a public street and began to engage him in "small talk." The record does not support Benitez's assertion the officer subjected him to "ever-intensifying" accusatory questions and thus converted a consensual encounter into a detention. (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790-791 [once police officer advised defendant he had information defendant was carrying a lot of drugs, no reasonable person would have believed he was free to leave].) Officer Schrom asked Benitez "what they were up to" and whether they were involved in a drug transaction. Benitez was not required to answer his questions. Schrom then asked Benitez for identification. Benitez said he did not have any identification because he had just been released from jail. Schrom inquired further and learned Benitez was on probation. The record lacks any indication to show Benitez reasonably believed he was restrained. Nor did he say he wanted to leave or did not want to speak to Schrom.

"[C]onsensual encounters between police and citizens result in no restraint on an individual's liberty and thus no seizure within the meaning of the Fourth Amendment even when initiated by law enforcement without objective justification." (*Sanchez*, *supra*, 195 Cal.App.3d at pp. 47-49; see *Florida v. Royer, supra,* 460 U.S. 491, 497-498 [law enforcement officers do not violate the Fourth Amendment by merely approaching an

8

individual on the street or in another public place and by asking questions if the person is willing to listen].) Benitez was not required to answer the officer's questions. His constitutional rights were not infringed by the initial, consensual encounter with the officer.

B

*Briefly Detaining Benitez To Verify His Probation Conditions*
*Was Not Unconstitutional*

Benitez argues the officer was not justified in prolonging his detention after the pat-down search to verify his probation status. Benitez maintains there were no facts to indicate he was engaged in any illegal activity, had weapons, threatened the officers in any way or attempted to flee. He states the People do not provide any legal authority to support the argument that a law enforcement officer is entitled to detain a person who is on probation after a detention and pat-down search have revealed no wrongdoing. Benitez contends an unreasonably prolonged detention is a de facto arrest that must be supported by probable cause to be valid.

A detention is unconstitutional "when extended beyond what is reasonably necessary under the circumstances that made its initiation permissible." (*People v. Russell* (2000) 81 Cal.App.4th 96, 101.) "The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case.' " (*Florida v. Royer, supra*, 460 U.S. at pp. 500, 506.) There is no litmus test for distinguishing an investigatory stop from a full arrest. (*Ibid.*) An extended custodial seizure can be justified only by probable cause and not by general considerations of reasonableness. (*Dunaway v. New York* (1979) 442 U.S. 200, 212-213.)

9

Moreover, the United States Supreme Court has recognized that a state's operation of a probation system may justify departures from the Fourth Amendment's usual warrant and probable cause requirements. (*Griffin v. Wisconsin* (1987) 483 U.S. 868, 873-874.) Probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' " (*Id.* at p. 874.) "These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (*Id.* at p. 875.) "These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed." (*Ibid.*) Although the degree of impingement upon the privacy of a probationer is greater than applied to the public at large, it is not unlimited. (*Ibid.*)

We do not believe a brief detention to check a person's conditions of probation impermissibly infringes on that person's Fourth Amendment rights. Fourth Amendment waivers are a common condition of probation and widely recognized as a proper restriction to facilitate rehabilitation and protect public safety. Here, at the time the officer directed Benitez to wait, he had not confirmed Benitez's identity and did not know the nature of any crime or crimes Benitez had previously committed, the reason Benitez was on probation, and the terms of his probation. In addition, he was investigating a possible narcotics transaction; thus, the officer had a legitimate justification for briefly detaining Benitez.

While the mere fact a person is on probation does not give rise to reasonable suspicion of criminal activity (*People v. Guerrero* (1978) 85 Cal.App.4th 580-581), any inconvenience to Benitez in waiting a brief time while the officers checked his conditions

10

of probation was minimal when balanced against the government's interest in ensuring his compliance with the terms of his probation and checking whether the conditions of probation permitted a warrantless search of his home (*People v. Woods* (1999) 21 Cal.4th 668, 675).

The cases cited by Benitez to support his argument that there was no justification to detain him after the pat-down search do not assist him here. *Willet v. Superior Court* (1969) 2 Cal.App.3d 555, and *People v. Bello* (1975) 45 Cal.App.3d 970 did not concern a brief detention to verify the person's identification and conditions of probation. Instead, the detention in those cases exceeded the scope of the initial stops, one for an equipment violation (*Willet*, at pp. 557-558), and the other on suspicion of driving under the influence (*Bello*, at p. 972). The reviewing courts held that the officer in each case had no legitimate reason for detaining the defendant after completing the purpose of the initial stop. (*Willet*, at p. 559; *Bello*, at p. 973.)

In addition, the detention following the pat-down search was extremely brief. (See *United States v. Sharpe* (1985) 470 U.S. 675, 686-688 [20-minute investigative detention was reasonable under circumstances].) Benitez was not subjected to an extended custodial seizure requiring probable cause. (See *Dunaway v. New York, supra*, 442 U.S. at pp. 212-213.) The officer directed Benitez to sit down while another officer confirmed his identity and checked the conditions of his probation status. The other officer obtained identifying information, including a photo, and was looking at Benitez to verify his identity when he noticed the bulge in his sock. While the length of the detention is only one circumstance, here its brevity weighs heavily in favor of a finding of reasonableness (*People v. Glaser,*

11

*supra*, 11 Cal.4th at pp. 366-369), especially in view of the state's interest in deterring further offenses by the probationer and ascertaining compliance with the terms of probation (*People v. Woods*, *supra*, 21 Cal.4th at p. 675).

C

*The Officer Did Not Locate Any Contraband During the Pat-down Search;*
*Therefore There Is Nothing To Suppress*

Benitez contends the pat-down search violated his Fourth Amendment rights because it was not based on a reasonable belief he was armed or dangerous. He argues the officer had only an "inchoate and unparticularized suspicion or 'hunch,' " which is an insufficient ground on which to justify a pat-down search for weapons. (*Terry v. Ohio, supra*, 392 U.S. at p. 27.) Benitez argues this court should reverse the trial court's ruling denying the motion to suppress.

The officer did not find the bindle of methamphetamine in Benitez's sock during the pat-down search. Benitez does not assert the search of his sock violated his Fourth Amendment rights and does not claim the evidence found after the pat-down search should be suppressed as the " 'fruit of the poisonous tree.' " (*Wong Sun v. United States* (1963) 371 U.S. 471, 487-488.) Moreover, the record supports the conclusion the bindle of methamphetamine would have been discovered had the officer not conducted a pat-down search but merely asked Benitez to wait until the record check was complete. (See, generally, *People v. Weiss* (1999) 20 Cal.4th 1073, 1077 [independent source doctrine

12

allows admission of evidence that has been discovered by means wholly independent of any constitutional violation].) Therefore, we need not address defendant's argument concerning the legality of the pat-down search.

DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.