[No. A025767. First Dist., Div. One. Feb. 25, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL E. GONZALES, Defendant and Appellant.

**COUNSEL**

Paula W. Schlichter, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Linda Ludlow and Cynthia Choy Ong, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Following an unsuccessful Penal Code section 1538.5 motion to suppress evidence essential to his conviction, defendant Gonzales pleaded nolo contendere to a charge of receiving stolen property. Proved, or admitted, were two prior convictions of felony. On his appeal from the judgment entered upon his plea, he urges error *only* in the denial of his motion to suppress evidence.

■ On his motion in the superior court, he contended that he had been unconstitutionally detained, and thus "seized," by a police officer, which official misconduct led to discovery that the automobile occupied by him was stolen. He repeats the contention here on his appeal.

Our function on such an appeal is established by the authority of *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], as follows:

" ' " ■ A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the [trial] court *sitting as a finder of fact.* " . . .' In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether *express or implied,* must be upheld if they are supported by substantial evidence." (Latter italics added.)

We relate the mainly uncontroverted evidence as it was presumably found true by the superior court.

Around 12:30 a.m. one morning a *uniformed* police officer observed a parked *Chevrolet* automobile with two occupants, in a neighborhood composed mainly of apartment buildings and townhouses. "Due to the numerous alcohol and drug and auto burglary problems . . . and the late hour it was," the officer walked up to the vehicle. As the officer approached, the person in the vehicle's driver's seat rolled down the nearby window.

■ (Up to that point, no constitutional infringement is discerned. The state's Supreme Court in *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 789 [195 Cal.Rptr. 671, 670 P.2d 325], quoting high federal authority, teaches: " ' [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the question at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional

rights have been infringed.'" And the court had earlier said: "A police officer may stop and question persons on public streets, *including those in vehicles,* when the circumstances indicate to a reasonable man in a like position that such a course of action is called for in the proper discharge of the officer's duties." (*People* v. *Flores* (1974) 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353]; italics added.) Such a stop is but a "*'minimal intrusion'*" (*Delaware* v. *Prouse* (1979) 440 U.S. 648, 655 [59 L.Ed.2d 660, 668, 99 S.Ct. 1391]; italics added) with which the Fourth Amendment is unconcerned.)

We continue with the record's factual narrative. The officer, believing it to be his duty to know "if he lived in the area and to find out who he was," *asked* for his driver's license. The driver said he had none. *Asked* if he had other identification, the driver again said that he had none. Then *asked* to identify himself verbally the driver, who was defendant Gonzales, gave a name which he could not pronounce articulately, and also could not spell. Moreover, the vehicle had no registration.

(It was the officer's request for Gonzales' driver's license and identification which constitutes the principal basis of his contention. There is sparse California law upon the subject, but the nation's high court has often spoken. Under such circumstances, "[d]isclosure of name and address is an essentially neutral act." (*California* v. *Byers* (1971) 402 U.S. 424, 432 [29 L.Ed.2d 9, 19, 91 S.Ct. 1535].) "*Asking* for and examining [one's] driver's license [was] no doubt permissible." (*Florida* v. *Royer* (1983) 460 U.S. 491, 501 [75 L.Ed.2d 229, 239, 103 S.Ct. 1319]; italics added.) And in *United States* v. *Mendenhall* (1980) 446 U.S. 544, 555 [64 L.Ed.2d 497, 510, 100 S.Ct. 1870], federal agents approached Sylvia Mendenhall and identified themselves as such. "They requested, but did not demand to see the respondent's identification and ticket. *Such conduct, without more, did not amount to an intrusion upon any constitutionally protected interest.* (Our emphasis.) The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement official." Under this authority it becomes manifest that the police officer of the case before us abridged no constitutional tenet by *asking* Gonzales for his driver's license and identification.)

Following the officer's lawful request for identification, the rapidly unfolding events disclosed that Gonzales had been driving without a license, and that the *Chevrolet* vehicle had no registration. The engendered, and certainly legitimate, suspicion led to the officer's radio-computer check which disclosed that the *Chevrolet's* license plates had been issued for a

*Fiat,* and that the vehicle itself had been stolen. The information led to the arrest, trial and conviction of Gonzales, a state prison parolee.

The trial court did not err in denying Gonzales' motion to suppress.

The judgment is affirmed.

Newsom, J., concurred.

Racanelli, P. J., concurred in the result only.

A petition for a rehearing was denied March 21, 1985.