[No. F007110. Fifth Dist. June 15, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRIS FRANKLIN, Defendant and Appellant.

COUNSEL

Mark E. Cutler, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PETTITT, J.* —An information filed on September 19, 1985, accused appellant in the first count of murder (Pen. Code, § 187)[1] with allegations of

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code unless otherwise indicated.

firearm use (§ 12022.5) and the fact the murder was committed in the course of a robbery (§ 190.2, subd. (a)(17)); and in the second count with robbery (§§ 211, 213.5) with an allegation of firearm use (§ 12022.5).

Appellant pleaded not guilty. After denials of his motion to suppress under section 1538.5 and motion for reconsideration, appellant withdrew his plea of not guilty and pleaded guilty to the first count and admitted the allegations. The second count was dismissed. Appellant was sentenced to a term of 25 years to life for first degree murder, plus a consecutive term of two years for use of a firearm.

Appellant filed a timely notice of appeal.

A little past midnight on August 10, 1985, authorities found the body of Joseph Luther in his room after responding to a call from the Desert Motel. Luther had been shot twice; his pockets were turned inside out. A search of the room produced a .22 caliber shell casing and drug paraphernalia. Luther was sharing the room with a woman whom authorities found sitting outside.

Perhaps 20 or 30 minutes before discovery of the body, Ridgecrest Police Officer Michael Scott was patrolling in an area where vandalism, robbery and narcotics trafficking was prevalent. He spotted appellant walking south on Warner Street, about one-half block away from the Desert Motel. Appellant was wearing a full-length camouflage jacket. The officer thought this odd on a warm summer evening. The officer shone his patrol car spotlight on appellant.

The officer noted appellant was carrying a white cloth-like object which he appeared to try to conceal from the light. The officer pulled up directly behind appellant and stopped his car. He radioed his position and reported he was making a pedestrian stop.

While the officer was on the radio, appellant approached the patrol car on the passenger side. When the officer got out of the car, appellant came toward him; they met in the area of the headlights. Appellant repeatedly asked, "What's going on?"

The officer noted appellant was sweaty and appeared "real jittery, hyper." The officer asked him to remove his hands from his pockets. When appellant did so, the officer saw what appeared to be a film of blood on his hands and noted, visible in his pocket, a cork-stopped vial containing a white powdery substance.

Appellant put his hands back in his pockets and when told to remove them again, fled. The officer chased and tackled him. There was a struggle

and appellant fled again. Once more the officer caught him and held him until assistance arrived.

Appellant was arrested for possession of narcotics. Shortly after handcuffing appellant, the officer learned of the murder at the Desert Motel. A vial containing white powder was found at the site of the first struggle; a .22 semi-automatic pistol, an unspent .22 cartridge and another vial were found in the area where the officer first encountered appellant. At the police station, wallets belonging to the victim and his female companion were found in appellant's possession.

On appeal appellant challenges the trial court's denial of his motion to suppress under section 1538.5. We focus upon the events between the time the officer first spotted appellant walking on the street and when appellant removed his hands from his pockets. Appellant first argues he was detained improperly by the officer, no articulable suspicion existing that he committed or was about to commit a crime. Second, if we construe the initial contact between the officer and appellant as a consensual encounter, the officer's request that appellant remove his hands from his pockets exceeded the permissible scope of authority under such an encounter and converted the encounter to an improper detention, the officer still lacking an articulable suspicion sufficient to support a detention.

■ On review of a motion to suppress, we defer to the trial court's factual findings, where supported by substantial evidence, but must independently assess, as a question of law, whether under the facts as found the challenged search and seizure conforms to the constitutional standards of reasonableness. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) ■ "For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are ... 'consensual encounters' [citation], which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' [Citation.] Second, there are what are commonly termed 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' [Citation.] Third, and finally, there are those seizures of an individual which exceed the permissible limits of a detention, ... and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime." (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].)

■ The line between a consensual encounter which is marked by its voluntary nature, the citizen being under no compulsion to respond or remain, and a detention, which results in a restriction of freedom, is drawn upon objective grounds. If a reasonable person in appellant's position believes in view of all the surrounding circumstances that he is not free to leave, a detention has occurred and such detention must be supported by an articulable suspicion. (*Id.* at p. 790.) The officer's state of mind is not relevant for resolution of this question except insofar as his overt actions would communicate that state of mind. (*People* v. *Bailey* (1985) 176 Cal.App.3d 402, 406 [222 Cal.Rptr. 235].) Here, we take the facts as found by the trial court, either expressly or by implication, and redetermine whether a reasonable man in appellant's position would have felt himself free to leave. (See *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

As appellant aptly discusses, two cases with related facts appear to define the limits of our determination. In *People* v. *Bailey, supra,* 176 Cal.App.3d at pages 404-406, the court found that when an officer pulled in behind the defendant's car, parked in an empty parking lot, and turned on his colored emergency lights, the occupant of the car reasonably believed he was not free to leave. Conversely, the court in *People* v. *Rico* (1979) 97 Cal.App.3d 124, 128-130 [158 Cal.Rptr. 573], found that an officer who momentarily spotlighted a car, as both cars were traveling on the freeway, and then followed the car for five minutes before the driver voluntarily pulled to the shoulder, did not "detain" the occupants.

Our facts fall between those in *Bailey* and *Rico*. ■ While the spotlighting of appellant alone fairly can be said not to represent a sufficient show of authority so that appellant did not feel free to leave (*id.* at p. 130), the question is whether the immediate act of pulling to the curb *behind* appellant constituted an "additional overt action" (*ibid.*) sufficient to convince a reasonable man he was not free to leave. We think not.

Certainly, an officer's parking behind an ordinary pedestrian reasonably would not be construed as a detention. No attempt is made to block the way. (Cf. *People* v. *Wilkins* (1986) 186 Cal.App.3d 804, 809 [231 Cal.Rptr. 1].) Here, the officer did not block appellant's way; he directed no verbal requests or commands to appellant. Further, the officer did not alight immediately from his car and pursue appellant. Coupling the spotlight with the officer's parking the patrol car, appellant rightly might feel himself the object of official scrutiny. However, such directed scrutiny does not amount to a detention. (See *Wilson* v. *Superior Court, supra,* 34 Cal.3d at pp. 790-791.) Thus, appellant's approach toward the patrol car appears as a voluntary act and not a submission to a show of authority. Appellant's claim that he was detained improperly is rejected.

■ Next, we must decide whether the officer's request for appellant to remove his hands from his pockets converted the consensual encounter into a detention.

■ The basic premise behind "consensual encounters" is that a citizen may consent voluntarily to official intrusions upon interests protected by the Constitution. If the citizen acts in reasonable submission to a show of authority, then his actions are not voluntary or consensual. Where consensual, consent may be withdrawn at any time. (*People* v. *Gurtenstein* (1977) 69 Cal.App.3d 441, 451 [138 Cal.Rptr. 161].) The citizen participant in a consensual encounter may leave, refuse to answer questions or decline to act in the manner requested by the authorities.

Where a consensual encounter has been found, police may inquire into the contents of pockets (*People* v. *Epperson* (1986) 187 Cal.App.3d 115, 118-120 [232 Cal.Rptr. 16]); ask for identification (*People* v. *Gonzales* (1985) 164 Cal.App.3d 1194, 1196-1197 [211 Cal.Rptr. 74]); or request the citizen to submit to a search (*People* v. *Profit* (1986) 183 Cal.App.3d 849, 857, 879-880 [229 Cal.Rptr. 148]). It is not the nature of the question or request made by the authorities, but rather the manner or mode in which it is put to the citizen that guides us in deciding whether compliance was voluntary or not.

■ Therefore, the nature of the officer's request here— asking that appellant remove his hands from his pockets—does not convert the encounter into a detention. However, if the manner in which the request was made constituted a show of authority such that appellant reasonably might believe he had to comply, then the encounter was transformed into a detention.

At the suppression hearing the officer did not attempt to quote what he told appellant. He testified simply:

"A. As I stepped out of my patrol car, he started walking around the front of it, so I met him right about the middle front of the patrol car in the headlights.

"Q. What happened next?

"A. I was—standard procedure, I don't like people having their hands in their pockets for safety reasons, so I asked him to take his hands out of his pockets. He took his hands out of his pockets and the whole time he just kept repeating what's going on, what's going on." In response to questioning by appellant's attorney, he stated:

"Q. And you did order Mr. Franklin to take his hands out of his pockets?

"A. I asked him to." Later, he responded to appellant's counsel:

"Q. Did you ask Mr. Franklin to take his hands out of the pockets and place them on your patrol vehicle?

"A. No, I did not."

All we know is that the officer *asked,* not ordered, appellant to remove his hands. Such a request, an *asking,* reasonably cannot be construed as a show of authority sufficient to transform the encounter into a detention. (*People* v. *Gonzales, supra,* 164 Cal.App.3d at p. 1197.)

The trial court found properly under these facts that the authorities did not violate appellant's Fourth Amendment rights and correctly denied appellant's section 1538.5 motion.

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.

Petitions for a rehearing were denied June 30, 1987, and July 15, 1987. Appellant's petition for review by the Supreme Court was denied September 23, 1987.