[No. G006708. Fourth Dist., Div. Three. July 19, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
SERVANDO NAJERA LOPEZ, Defendant and Respondent.

**COUNSEL**

Cecil Hicks, District Attorney, Michael R. Capizzi, Maurice L. Evans, Assistant District Attorneys, Thomas M. Goethals, E. Thomas Dunn and Andrea Burke, Deputy District Attorneys, for Plaintiff and Appellant.

Ronald Y. Butler, Public Defender, under appointment by the Court of Appeal, Carl C. Holmes, Thomas Havlena and Ronald E. Klar, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**CROSBY, J.—** ▇▇▇ The question presented here is whether a police request for identification during a street encounter amounts to a detention

in the sense that a reasonable person would not feel free to leave under the circumstances and must be grounded upon some reasonable suspicion. The answer is no.

## I

Santa Ana Police Corporal Richard Reese, a 13-year veteran, and a recruit were patrolling for narcotics traffickers in a parking lot on October 22, 1986. The officers saw Servando Najera Lopez sitting on the hood of a car. Reese "thought [he] recognized [Lopez] from some prior encounter" but "just couldn't remember where," so he initiated the following conversation as they walked by: "And I happened to ask him as I was passing if that was his car. And he said, 'No, it's not my car.' [¶] And then I asked him why he was sitting on that car, and he told me he was waiting for his friends to play pool. At this time I came to a stop . . . and looked back at him and asked him, if he was waiting for his friend to play pool, where his pool stick was. He didn't reply at that time. [¶] And I asked him, did he have an I.D. card or did he have I.D.; and he reached into his left front pocket and handed his wallet to [the recruit]."

The wallet was opened, a bindle "pop[ped] up," and Lopez was arrested after the officers confirmed it appeared to contain cocaine. More narcotics were found during a postarrest search.[1]

## II

The district attorney concedes the officers had no reasonable justification to detain Lopez before the contraband was discovered. But, contrary to the trial court's conclusion, it is quite clear police do not need to have a reasonable suspicion in order to ask questions or request identification: "[O]ur recent decision in [*Florida* v. *Royer* (1983) 460 U.S. 491 (75 L.Ed.2d 229, 103 S.Ct. 1319)] plainly implies that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." (*INS* v. *Delgado* (1984) 466 U.S. 210, 216 [80 L.Ed.2d 247, 255, 104 S.Ct. 1758].) Of course, in theory the citizen can refuse and simply walk away. (See *Brown* v. *Texas* (1979) 443 U.S. 47 [61 L.Ed.2d 357, 99 S.Ct. 2637].) Whether this is an accurate assessment of street reality is not for us to decide. (See *People* v. *Contreras* (1989) 210 Cal.App.3d 450, 452 [258 Cal.Rptr. 361].) It is clearly the view of the

---

[1] The officer described the neighborhood's reputation and his experience in that locale. Reese had participated in "approximately [ ] 600 or 700" narcotics arrests in the area, which was "rampant [with] narcotics" and "occupied by about 100 percent undocumented aliens" who controlled a gang involved in car thefts.

current majority of the United States Supreme Court. (*INS* v. *Delgado, supra,* at pp. 216-217 [80 L.Ed.2d at p. 255].)

■ That court holds no detention or Fourth Amendment seizure occurs until an encounter reaches the point where a reasonable person would not feel free to leave. (*INS* v. *Delgado, supra,* 466 U.S. at pp. 216-217 [80 L.Ed.2d at p. 255].) Thus, the key issue here is whether the officer's questions and the request for identification changed the consensual nature of the encounter to a detention: " '[A] person has been "seized" within the meaning of the Fourth Amendment . . . only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 571-572, 108 S.Ct. 1975]; see also *Florida* v. *Royer, supra,* 460 U.S. at p. 502 [75 L.Ed.2d at pp. 239-240]; *United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870] (plur. opn. of Stewart, J.); *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 790 [195 Cal.Rptr. 671, 670 P.2d 325].) ■ The district attorney argues this "consensual ordeal" was trivial and did not implicate Fourth Amendment concerns; i.e., there was no seizure of Lopez's person.

We agree *Royer* and *Delgado* compel the conclusion that no seizure occurred here under the Supreme Court's formulation. In *Royer* only one member of the court, Justice Brennan, adopted the position that a request for identification would reasonably cause an individual to believe he was not free to leave. (*Florida* v. *Royer, supra,* 460 U.S. at p. 511 [75 L.Ed.2d at p. 245] (conc. opn. of Brennan, J.).) The plurality opinion by contrast states, "Asking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for purposes of the Fourth Amendment." (*Id.,* at p. 501 [75 L.Ed.2d at p. 239].) Four justices approved that statement, notwithstanding their apparent determination that the officers had no reasonable basis to suspect Royer of criminal activity until they learned he was traveling under an assumed name. (*Ibid.*; see also *People* v. *Gonzales* (1985) 164 Cal.App.3d 1194 [211 Cal.Rptr. 74].) Subsequently in *Delgado* it became clear that a majority of the Supreme Court was in accord with this dictum. (*INS* v. *Delgado, supra,* 466 U.S. at pp. 216-217 [80 L.Ed.2d at p. 255].) Consequently, we hold that the request for identification was not enough to constitute a Fourth Amendment seizure.

■ Nevertheless, questions of a sufficiently accusatory nature may by themselves be cause to view an encounter as a nonconsensual detention. (*Wilson* v. *Superior Court, supra,* 34 Cal.3d at pp. 790-791.) In *Wilson* the

officers told the defendant they " 'had received information that he [ ] would be arriving today from Florida carrying *a lot of drugs.*' " (*Id.*, at p. 790.) The questions asked in this case were much less accusatory than the statement in *Wilson,* but they are not the stuff of usual conversation among adult strangers either. They did indicate the officers suspected defendant of something, if only bad manners; and the degree of suspicion expressed by the police is an important factor in determining whether a consensual encounter has ripened into a detention. (*Id.,* at p. 791, fn. 11.)[2]

■ The officers were concededly on the prowl for narcotics dealers; and Reese recognized Lopez from a previous, but then unremembered, encounter (a drunk driving arrest, as it turned out). Lopez was not engaged in any apparently unlawful conduct, yet the officers stood on either side of him and launched into a short, albeit somewhat accusatory, interrogation. But the questions were brief, flip, and, most importantly, did not concern criminal activity. The statements in *Wilson,* by contrast, were heavily accusatory and related to serious criminal conduct. The officers made no show of force or attempt to physically restrain Lopez, nor did they order him to remain. With all due deference to the trial court, we do not believe the undisputed evidence in this case meets the applicable legal standard, i.e., that "the circumstances [were] so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded . . . ." (*INS* v. *Delgado, supra,* 466 U.S. at p. 216 [80 L.Ed.2d at p. 255].)[3] If undocumented aliens would believe themselves free to go despite an immigration official's request for identification, a notion difficult for us to accept, Lopez could hardly have felt different. He at least should have been able to count on a winning suppression motion had he refused to produce identification or attempted to depart and been searched as a result. Under the rule currently in effect, however, his cooperation with the officers was his downfall.

Judgment reversed.

---

[2] The Court of Appeal has also focused on the form of the police request, stating, "[i]t is not the nature of the question or request made by the authorities, but rather the manner or mode in which it is put to the citizen that guides us . . . ." (*People* v. *Franklin* (1987) 192 Cal.App.3d 935, 941 [237 Cal.Rptr. 840].) We think both form and content are important. But here, the officer testified his "general tone of voice, the demeanor of [his] conversation," was no different from those presumably gentlemanly qualities he displayed in the witness box.

[3] Although the facts before us closely resemble those of *Brown* v. *Texas, supra,* 443 U.S. 47, where a unanimous Supreme Court held a demand for identification during a street encounter was unlawful, the prosecution conceded there that the defendant was seized at the outset and would not have been allowed to leave without producing identification. (See *United States* v. *Mendenhall, supra,* 446 U.S. at p. 570, fn. 5 [64 L.Ed.2d at p. 520] (dis. opn. of White, J.).) That is not the case here, of course.

Scoville, P. J., and Sonenshine, J., concurred.

**CROSBY, J.,** Concurring.—The instincts of the trial judge were absolutely correct. In the real world this defendant could not possibly have felt himself free to walk away when his identification was requested, and it is almost laughable to think the officers would have let him do so. (See *Florida* v. *Royer* (1983) 460 U.S. 491, 511 [75 L.Ed.2d 229, 245, 103 S.Ct. 1319] (conc. opn. of Brennan, J.); *People* v. *Contreras* (1989) 210 Cal.App.3d 450, 452 [258 Cal.Rptr. 361].) Nevertheless, a solid majority of the United States Supreme Court is of the view that ordinary citizens and even undocumented aliens confronted by immigration officials would be aware that they could merely saunter off when asked to identify themselves and produce confirming documents. (*INS* v. *Delgado* (1984) 466 U.S. 210 [80 L.Ed.2d 247, 104 S.Ct. 1758].) The same majority also believes law enforcement agents would allow them to do so, another highly dubious proposition in my opinion. (See *Brown* v. *Texas* (1979) 443 U.S. 47 [61 L.Ed.2d 357, 99 S.Ct. 2637]; *People* v. *Contreras, supra,* at p. 452.)

Among the most fundamental of the liberties enjoyed by members of a free and open society is the right to be left alone. Allowing police to demand identification without reasonable suspicion in ordinary street encounters and requiring those who would assert their rights to resist the police as the price of their freedom is unsound as a matter of constitutional law and sends exactly the wrong message to the citizenry. That message is: You are protected by the Fourth Amendment only to the extent you are willing to risk the physical violation of your person by armed officers. In accord with Justice Brennan, I believe we can do much better than that.

A petition for a rehearing was denied August 8, 1989, and respondent's petition for review by the Supreme Court was denied October 12, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.