Filed 4/29/13  In re D.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,        Plaintiff and Respondent, v. D.G.,        Defendant and Appellant. | E055888 (Super.Ct.Nos. KJ34361 & J241984*) OPINION |

APPEAL from the Superior Courts of San Bernardino and Los Angeles Counties.

Thomas S. Garza and Charles W. McCoy, Jr., Judges.  Affirmed.

---

\* Thomas S. Garza, Judge of the Superior Court of San Bernardino County, accepted the transfer of the matter from Los Angeles County to San Bernardino County and proceeded with disposition.  (Case No. J2411984.)  Minor does not appeal the dispositional orders, but from orders made by Charles W. McCoy, Jr., Judge of the Superior Court of Los Angeles County.  (Case No. KJ34361.)  A notice of appeal was filed in the Superior Court of San Bernardino County and subsequently in the Superior Court of Los Angeles County.  The matter pending before the Second Appellate District was eventually transferred to this court.

1

Eric Cioffi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

After the Los Angeles County Juvenile Court denied defendant and appellant D.G.'s (minor) motion to suppress, minor admitted that he had possessed methamphetamine for sale. (Health & Saf. Code, § 11378.) The San Bernardino County Juvenile Court thereafter declared minor a ward of the court and placed him on probation in the custody of his mother on various terms and conditions. Minor's sole contention on appeal is that the Los Angeles County Juvenile Court erred in denying his suppression motion. We reject this contention and affirm the judgment.

I

FACTUAL BACKGROUND[1]

On January 13, 2012, at approximately 7:00 p.m., Los Angeles County Sheriff Deputy Yvette Salazar was on patrol in a marked police vehicle when she noticed minor walking on the sidewalk wearing oversized "really baggy, dark-colored shorts and dark-colored hoodie and shirt." Deputy Salazar explained that minor drew her attention because, based on her experience, minor appeared to be dressed in gang attire. Deputy

---

[1] The factual background is taken from the February 10, 2012 hearing on the motion to suppress.

Salazar was aware of about three to four recent gang-related shootings in the area, one within a week, and decided to contact minor.

When Deputy Salazar approached minor in her patrol vehicle, the patrol vehicle's red and blue lights were not on, but she may have shined a spotlight on minor to see him better since it was dark outside. After Deputy Salazar parked her patrol car and exited the vehicle, she walked toward minor and asked him to come over to her. Minor cooperated with the deputy's request. Deputy Salazar did not have her weapon drawn when she approached minor.

When Deputy Salazar first began speaking with minor, she noticed that minor's pupils were dilated.[2] She asked minor if he was on probation or parole and if he had recently used any drugs. Minor replied that he was on probation and that he had smoked "crystal meth" earlier that day. Based on minor's responses, minor was thereafter detained. Deputy Salazar then conducted a search of minor's person for weapons and drugs. Deputy Salazar found a bag of methamphetamine, a note indicating drug sales, and a piece of paper containing an estimated profit margin for narcotics sales.

Minor moved to suppress the evidence pursuant to Welfare and Institutions Code section 700.1. The parties had stipulated that the search and seizure was conducted without a warrant.

Following the evidentiary hearing, the trial court in a written statement of decision denied minor's suppression motion. The court found the initial encounter to be

---

[2] Deputy Salazar testified that during her six and a half years as a deputy sheriff she had extensive experience conducting narcotics investigations.

consensual in nature; the deputy had reasonable suspicion to search and seize minor after the deputy was informed of minor's status as a probationer, observed minor's dilated pupils, and noted minor's response of recent illegal drug consumption.

II

DISCUSSION

Minor contends that the trial court erred in denying his suppression motion because the juvenile court failed to consider the age of minor and the initial contact was an unlawful detention. Specifically, he claims that in considering his age, 17 years old, and the circumstances surrounding the encounter, no reasonable person would believe the encounter was consensual in nature.

In reviewing the denial of a suppression motion, we evaluate the trial court's express or implied factual findings to determine whether they are supported by substantial evidence, but we exercise our independent judgment to determine whether, on the facts found, minor's Fourth Amendment rights have been violated. (*People v. Glaser* (1995) 11 Cal.4th 354, 362; *People v. Williams* (1988) 45 Cal.3d 1268, 1301.) There are essentially three categories or levels of police "contacts" or "interactions" for purposes of Fourth Amendment analysis: consensual encounters, detentions, and seizures, which include formal arrests and restraints on an individual's liberty, comparable to an arrest. (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784 (*Wilson*).)

Our present inquiry concerns the distinction between consensual encounters and detentions. Not every encounter an individual has with law enforcement triggers Fourth Amendment scrutiny. (*Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16.) Consensual

4

encounters do not trigger such scrutiny.  (*Florida v. Bostick* (1991) 501 U.S. 429, 434 (*Bostick*).)  Unlike detentions, consensual encounters require no articulable suspicion that the person has committed or is about to commit a crime.  (*Wilson*, *supra*, 34 Cal.3d at p. 784.)  The United States Supreme Court has made it clear that a detention does not occur simply because a police officer asks an individual a few questions.  (*Bostick*, at p. 434.)  As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual, and no reasonable suspicion is required on the part of the officer.  (*California v. Hodari D*. (1991) 499 U.S. 621, 628.)  Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty does a seizure occur; thus, Fourth Amendment scrutiny will not be triggered unless the encounter loses its consensual nature.  (*Bostick*, at p. 434.)

There is no bright-line rule to determine if an encounter is consensual.  (*Ohio v. Robinette* (1996) 519 U.S. 33, 39.)  "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."  (*Bostick*, *supra*, 501 U.S. at p. 439.)  Whether or not a person would have believed that he or she was free to leave is to be evaluated in light of the totality of the circumstances, rather than emphasizing particular details of that conduct in isolation.  (*Michigan v. Chesternut* (1988) 486 U.S. 567, 573.)  Factors that might indicate an unlawful detention has taken place include:  (1) the presence of several police officers; (2) an officer's display of a weapon; (3) some physical touching of the

person; or (4) the use of language or a tone of voice indicating that compliance with the officer's request might be compelled.  (*United States v. Mendenhall* (1980) 446 U.S. 544, 554 (*Mendenhall*); *In re Manuel G.* (1997) 16 Cal.4th 805, 821.)  "The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. [Citation.]"  (*In re Manuel G.*, at p. 821; see also *Mendenhall*, at p. 554.)

Relying on *J.D.B. v. North Carolina* (2011) 564 U.S. ___ [131 S.Ct. 2394, 180 L.Ed.2d 310] (*J.D.B.*) and *Kaupp v. Texas* (2003) 538 U.S. 626 (*Kaupp*), minor initially contends that the lower court was required to consider his age in the Fourth Amendment context when a juvenile is subject to an unlawful detention.  He therefore claims the juvenile court erred, as a matter of law, and the matter must be reversed and remanded.

In *J.D.B.*, *supra*, 131 S.Ct. 2394, the high court addressed the question whether the age of a child subjected to police questioning is relevant for purposes of a *Miranda* analysis.  That case involved "a 13-year-old, seventh-grade student attending class" at a middle school who was removed from class and then questioned by a uniformed police officer in a closed conference room with another officer and two school administrators present for 30 to 45 minutes.  (*Id*. at pp. 2399-2400.)  The minor confessed to a theft after the police investigator "warned" that he could be put in juvenile detention.  (*Id*. at p. 2400.)  The Supreme Court held that the age of the subject is relevant to the custody analysis of *Miranda*, and remanded the case for the state court to consider the minor's age as one of the relevant factors in determining whether he was in custody when police interrogated him.  (*Id*. at pp. 2398-2399, 2408.)  However, while the court was certainly

6

concerned with coerced, false confessions from an innocent juvenile, it did not extend its discussion to Fourth Amendment consensual encounters. The court did, however, note that "even where a 'reasonable person' standard otherwise applies, the common law has reflected the reality that children are not adults." (*Id*. at p. 2404.)

In *Kaupp*, *supra*, 538 U.S. 626, the court essentially focused on the distinction between detentions and arrests, rather than between consensual encounters and detentions. (*Id*. at pp. 630-631.) The court explained: "A 17-year-old boy was awakened in his bedroom at three in the morning by at least three police officers, one of whom stated 'we need to go and talk.' He was taken out in handcuffs, without shoes, dressed only in his underwear in January, placed in a patrol car, driven to the scene of a crime and then to the sheriff's offices, where he was taken into an interrogation room and questioned. This evidence points to arrest even more starkly than the facts in *Dunaway v. New York* [(1979)] 442 U.S. 200, 212 . . . where the petitioner 'was taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room.' There we held it clear that the detention was 'in important respects indistinguishable from a traditional arrest' and therefore required probable cause or judicial authorization to be legal. [Citation.]" (*Kaupp*, at p. 631.) However, in addressing the issue of consensual encounters, the court explicitly applied the "reasonable person" standard. (*Id*. at pp. 629-630.)

We find that neither *Kaupp* nor *J.D.B.* support minor's position that the matter must be reversed and remanded, because the juvenile court, *as a matter of law*, was "obligated to consider minor's age" and failed to do so. Those cases hold that age, along

with other factors such as previously noted, is a factor a lower court should consider when determining the issue of detention or custodial interrogation. There is no indication in the record to show that the juvenile court here *failed* to consider minor's age in denying the suppression motion. Although the juvenile court did not explicitly note minor's age in its statement of decision, the court was aware that minor was a "youth" or a "minor," and applied the appropriate objective test. Appealed judgments and orders are presumed correct, and error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "The general rule is that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]" (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496-497.)

We now turn to the question of whether the encounter was consensual in nature or a detention. Minor argues that under the totality of the circumstances, he was subjected to an unlawful detention because a reasonable person in his position would not have felt free to walk away.

We conclude the juvenile court properly denied minor's suppression motion because the contact between the deputy and minor was consensual in nature. Here, Deputy Salazar was on routine patrol in a marked unit when she saw minor walking on the sidewalk wearing oversized "really baggy, dark-colored shorts and dark-colored hoodie and shirt." Deputy Salazar explained that minor drew her attention because, based on her experience, minor appeared to be dressed in gang attire; she was aware of three to four recent gang-related shootings in the area, one within a week, and decided to contact minor. Because it was dark outside, the deputy shined the patrol vehicle's

8

spotlight on minor, parked and exited her vehicle, and asked minor to come over to her. Minor cooperated with the deputy's request. As Deputy Salazar made contact with minor, she noticed that minor's pupils were dilated and asked minor whether he was on probation or parole and if he had recently used any drugs. Minor replied that he was on probation and that he had used methamphetamine earlier in the day. This gave the deputy reasonable suspicion to detain minor thereafter.

There is no indication in the record here that the deputy confronted minor in an apprehensive manner, or that the initial encounter was anything more than consensual. Minor was cooperative and voluntarily responded to the deputy's questions. The deputy did not draw her gun or use force or threats. Minor was not directed to a different location, and the encounter took place in a public setting. The tone of the encounter was conversational, not accusatory. It appears that Deputy Salazar did not exhibit any physical or verbal force that would cause a reasonable person to feel that he or she was not free to leave. The encounter was not converted into a detention requiring Fourth Amendment scrutiny merely because Deputy Salazar activated her patrol vehicle's spotlight on minor and asked minor to come over to her. (See *Bostick*, *supra*, 501 U.S. at p. 434; *Florida v. Royer* (1983) 460 U.S. 491, 497-498; *People v. Hughes* (2002) 27 Cal.4th 287, 328.)

*People v. Lopez* (1989) 212 Cal.App.3d 289 is illustrative. In *Lopez*, the court found no detention when officers, who were concededly on the prowl for narcotics dealers, recognized the defendant from a previous encounter. The officers "stood on either side of him and launched into a short, albeit somewhat accusatory, interrogation."

9

(*Id*. at p. 293.) The officers asked the defendant whether the car he was sitting on belonged to him. (*Id*. at p. 291.) When he said no, the officers asked why he was sitting on that car. The defendant responded that he was waiting for his friends to play pool. When the officers asked where his pool stick was, the defendant did not reply. The officers asked whether he had identification, and the defendant reached into his pocket. The defendant handed the officer his wallet and, when it was opened, a bindle of cocaine " 'pop[ped] up.' " (*Ibid*.) Finding the questions were "brief, flip, and, most importantly, did not concern criminal activity," the reviewing court concluded the questions were not so accusatory as to demonstrate that a reasonable person would believe he was not free to leave. (*Id*. at p. 293.)

Similarly, in this case, minor voluntarily complied with the deputy's request to come over to her once she walked toward minor. In addition, minor voluntarily responded to the deputy's questions. Defendant could have simply walked away from the deputy. Furthermore, the record shows that only Deputy Salazar was present at the scene, she did not have her weapon drawn, she did not physically touch minor, she did not use her patrol vehicle's siren, and she did not tell minor to sit or stand in a particular location. Therefore, the initial nature of the contact between minor and Deputy Salazar was consensual and did not constitute a detention requiring reasonable suspicion.

Minor contends that he was unlawfully detained when the deputy shined her patrol vehicle's spotlight on him, parked and exited her vehicle, and asked minor to come over to her. He relies on *People v. Roth* (1990) 219 Cal.App.3d 211 (*Roth*) and *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*) to support his position.

10

In *Roth*, *supra*, 219 Cal.App.3d 211, one of two police officers in a patrol car shone a spotlight on the defendant and stopped the patrol car. (*Id*. at p. 213.) Both officers got out, and one stood behind the patrol car door and told the defendant to approach in order to talk with him. (*Ibid*.) The trial court ruled that a detention had occurred when a police officer shined a spotlight on the defendant, stopped his patrol vehicle, got out of the vehicle along with a second officer, and "command[ed]" the defendant to approach and speak with him. (*Id*. at p. 215.) The officer said either " 'I would like to talk to you,' " or " 'Come over here. I want to talk to you.' " (*Id*. at p. 213.) Significantly, the trial court expressly found that the officer had "command[ed]" the defendant to approach him. (*Id*. at p. 215, fn. 3.) One of the two Court of Appeal justices who found there was an unlawful detention expressed doubt about whether the statement was a request or a command. However, the trial court had found it was a command, and both justices concluded they were bound by that finding. (*Id*. at pp. 215, fn. 3, 216 (conc. opn. of Todd, J.).) Here, by contrast, only one officer was present, and the juvenile court did not make a finding that Deputy Salazar commanded minor to come over to her. Rather, the juvenile court specifically made the factual determination that no command was made.[3]

---

[3] As previously noted, whether a seizure occurred within the meaning of the Fourth Amendment is a mixed question of law and fact qualifying for independent review. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) We review the lower court's factual findings under the deferential substantial evidence standard, accepting factual inferences in favor of the lower court's ruling, and we independently decide the ultimate constitutional question. (*Ibid*.)

In *Garry*, *supra*, 156 Cal.App.4th 1100, an officer was patrolling a high-crime neighborhood at 11:23 p.m. when he noticed the defendant standing on a street corner next to a parked car. (*Id*. at pp. 1103-1104.) The officer parked his vehicle approximately 35 feet away and observed the suspect for approximately five to eight seconds. He then illuminated the defendant with the patrol car spotlight, exited his vehicle, and walked " 'briskly' " toward the defendant. (*Id*. at p. 1104.) By the officer's own testimony, he reached the defendant " 'two and a half, three seconds' after leaving his patrol car, during which time defendant referred to living 'right there' and took three or four steps back." (*Ibid*.) The officer then asked if the defendant was on parole, and the defendant affirmed that he was. At that point, the officer grabbed the defendant who actively resisted. The officer then restrained and arrested the defendant. (*Ibid*.)

The *Garry* defendant unsuccessfully moved to suppress the evidence seized during a search incident to the arrest. The trial court found that a consensual contact occurred when the officer " 'simply approached' " the defendant and started to speak with him, and that the officer had a legal basis to detain the defendant once he admitted that he was on parole. (*Garry*, *supra*, 156 Cal.App.4th at pp. 1104-1105.) On appeal, the appellate court reversed, finding that the only conclusion to be drawn from the undisputed evidence was that the officer's actions "constituted a show of authority so intimidating as to communicate to any reasonable person that he or she was ' "not free to decline [his or her] requests or otherwise terminate the encounter." ' " (*Id*. at p. 1112.)

The appellate court pointed out that the officer's own testimony established that his conduct was both aggressive and intimidating. (*Garry*, *supra*, 156 Cal.App.4th at

p. 1111.) That conduct included: (1) bathing the defendant in a spotlight after observing him for only five to eight seconds; (2) walking so " 'briskly' " that he traveled 35 feet in " 'two and a half, three seconds' "; (3) disregarding the defendant's statement that he was standing outside his own home; and (4) immediately questioning the defendant's legal status. (*Id.* at pp. 1111-1112.) In light of the officer's own testimony, the appellate court was compelled to reject the trial court's finding that the officer " 'simply approached' " the defendant and " 'started to speak,' " because that finding was not supported by substantial evidence. (*Id.* at p. 1112.) The officer's own testimony established that he "all but ran directly at [the suspect], covering 35 feet in just two and one-half to three seconds, asking defendant about his legal status as he did so." (*Ibid.*)

Again, in *Garry*, unlike here, undisputed evidence of police intimidation overrode the trial court's finding that a detention did not occur. Here, there is no evidence of police intimidation, and nothing intimidating about the deputy's approach. Although the deputy shined the patrol lights on minor because it was dark outside and the deputy's statement for minor to come over to her may have been somewhat intimidating, the deputy did not park in a manner that blocked or impeded minor, or confront him, or issue a command, or intimidate him, or approach minor rapidly while questioning him. (See, e.g., *Michigan v. Chesternut* (1988) 486 U.S. 567, 575 ["While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure"]; *People v. Franklin* (1987) 192 Cal.App.3d 935, 940 [the court held that no detention had occurred where a police officer in his patrol car shone a spotlight on a suspect, drove the car

13

directly behind the suspect, and stopped with the vehicle's headlights illuminating the suspect].) Deputy Salazar's conduct did not constitute a detention.

In short, the evidence in this case is undisputed that Deputy Salazar's demeanor at the time of the encounter was not of the demanding or threatening variety. Deputy Salazar's statement to minor to come over to her was just that, a statement rather than a command. Deputy Salazar did not physically or verbally restrain minor, and nothing she said or did indicated that she wanted to do anything more than talk to minor. Thus, the evidence does not demonstrate a show of authority other than what is implicit when a uniformed police officer exits a patrol car to engage a citizen. It therefore fails to support that Deputy Salazar coerced minor to submit to questioning by means of physical force or a show of authority such that a reasonable person in minor's situation would not have felt free to leave.

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. [Citations.] Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. [Citation.] The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Citation.] He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not,

14

without more, furnish those grounds. [Citation.]" (*Florida v. Royer* (1983) 460 U.S. 491, 497-498.)

The U.S. Supreme Court has stated: "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means." (*United States v. Drayton* (2002) 536 U.S. 194, 201.) As previously noted, "it is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so. There is no Fourth Amendment violation as long as circumstances are such that a reasonable person would feel free to leave or end the encounter. [Citations.]" (*People v. Rivera* (2007) 41 Cal.4th 304, 309.) Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred. (*Terry v. Ohio*, *supra*, 392 U.S. at p. 19, fn. 16.)

Under the totality of the circumstances, a reasonable person in minor's position would have believed that he was free to walk away when Deputy Salazar shined her patrol light on minor and asked minor to come over to her. There was no detention under the Fourth Amendment at that point.

Based on our independent review of the circumstances as a whole, we conclude that minor's initial encounter with Deputy Salazar was consensual. The juvenile court properly denied minor's motion to suppress.

15

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

RICHLI
J.

16