Filed 2/3/21  P. v. Lottice CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br>JOSHUA WAYNE LOTTICE,<br><br>     Defendant and Appellant. | A157601<br><br>(Sonoma County<br>Super. Ct. No. SCR7226971) |

In a negotiated disposition following the denial of his motion to suppress evidence (Pen. Code, § 1538.5),[1] defendant Joshua Lottice pleaded no contest to carrying a concealed dirk or dagger (§ 21310) and admitted he suffered a prior strike conviction (§§ 211, 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).  He was sentenced to 32 months in prison.  On appeal, Lottice challenges the denial of his motion to suppress, contending the evidence against him was the fruit of an unlawful detention.  We disagree and affirm.

**BACKGROUND**

An information charged Lottice with carrying a concealed dirk or dagger (§ 21310).  The information also alleged Lottice had suffered a prior conviction for robbery (§ 211) qualifying as a strike offense within the

_____

[1] All further statutory references are to the Penal Code unless otherwise specified.

1

meaning of the "Three Strikes" law (§§ 667, subds. (d)–(e), 1170.12, subds. (b)–(c)) and had served three prior prison sentences qualifying for a sentence enhancement (§ 667.5, former subd. (b)).

Santa Rosa Police Officer David McCready testified at the preliminary hearing as to the following facts.[2]  On December 8, 2018, around 9:21 p.m., McCready was on patrol, driving on Sebastopol Road, when he spotted Lottice walking in the opposite direction.  McCready made eye contact with Lottice, who "quickly looked away . . . ."  McCready "thought it was odd that [Lottice] . . . tried to avoid eye contact . . . ."  McCready then turned his vehicle around, stopped, and contacted Lottice.

McCready asked Lottice for his name and identification.  Lottice identified himself and stated he was on parole.  When McCready asked Lottice if he had any weapons or contraband, Lottice stated he had a knife and a needle in his pocket.  McCready searched Lottice and located a three-inch, fixed-blade knife and a needle.

Lottice filed a motion to suppress evidence of the knife under section 1538.5, asserting it was obtained from an unlawful detention.  The People opposed the motion, arguing that the initial encounter between Lottice and McCready up to the time Lottice volunteered his parole status was consensual, and not a detention.  The trial court conducted a motion to suppress hearing, where McCready again testified.  The court admitted into evidence and reviewed a video recording of the encounter captured on McCready's body camera.[3]

---

[2] The parties stipulated that the factual basis for Lottice's plea would be the preliminary hearing transcript.

[3] We granted Lottice's motion to augment the record to include the body camera recording.

2

The recording first depicts without audio the point of view of McCready driving his patrol vehicle into the parking lot of a convenience store. McCready then parks in front of the store and exits the vehicle. As he steps out of the vehicle, the video shows McCready lifting his right arm, followed by his hands appearing to adjust his body camera. While doing so, McCready walks toward Lottice, who appears in the top right-hand part of the screen on a sidewalk, turning around and walking toward McCready.

When asked at the hearing what he was "doing with [his] hand as [he] got out of the patrol vehicle," McCready testified he was reaching for his lapel light which was directly above his body camera. McCready testified he then "called out to [Lottice] and asked if [he] could speak with him."

The recording next depicts Lottice and McCready approaching each other near the front of the store. The audio of the recording is powered on. McCready tells Lottice, "You just looked nervous," and asks him, "Can you keep your hand out of your pocket?" McCready then asks Lottice for his name and identification. Lottice provides his name and informs McCready that he is on parole for armed robbery. Shortly afterward, another officer arrives.

McCready then asks Lottice if he has any weapons, to which Lottice replies he has a knife in his pocket. Lottice also discloses he has a hypodermic needle. McCready searches Lottice and retrieves the knife and needle.

After taking the matter under submission, the court denied the suppression motion, finding "that it was a consensual encounter, not a detention and thereafter it developed into a PC [probable cause]."

Lottice pleaded no contest to carrying a concealed dirk or dagger (§ 21310) and admitted the prior strike conviction, in exchange for an agreed

3

term of 32 months in prison, consisting of the low term of 16 months (§§ 21310, 1170, subd. (h)(1)) doubled based on the prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)). The court approved the plea and imposed the agreed term. (§ 1192.5.) Lottice timely appealed.

## DISCUSSION

Lottice contends the trial court erred by refusing to suppress the knife found in his pocket on the night in question because it was the fruit of an unlawful detention. We disagree.

### A. *Legal Principles*

"The Fourth Amendment to the United States Constitution prohibits seizures of persons, including brief investigative stops, when they are 'unreasonable.' [Citations.] Our state Constitution has a similar provision. (Cal. Const., art. I, § 13.)" (*People v. Souza* (1994) 9 Cal.4th 224, 229.)

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty. [Citations.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) This case concerns the distinction between consensual encounters and detentions. Unlike detentions, "[c]onsensual encounters do not trigger Fourth Amendment scrutiny" and thus "require no articulable suspicion that the person has committed or is about to commit a crime. [Citation.]" (*Ibid.*)

No bright-line distinction exists between a consensual encounter and a detention; we look to the totality of the circumstances of a particular encounter to make the determination. (*In re Manuel G., supra*, 16 Cal.4th at p. 821.) " '[A] court must consider all the circumstances surrounding the

4

encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. [Citation.]" (*Ibid.*)

When a police contact rises to the level of a detention, the detention is "reasonable under the Fourth Amendment [if] the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza, supra*, 9 Cal.4th at p. 231.) "Section 1538.5 affords criminal defendants a procedure by which they may seek suppression of illegally seized evidence." (*People v. Romeo* (2015) 240 Cal.App.4th 931, 940.)

## B. *Standard of Review*

" 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. . . .' [Citation.]" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.) "If there is conflicting testimony, we must accept the trial court's resolution of disputed facts and inferences, its evaluations of credibility, and the version of events most favorable to the

5

[disposition on the suppression motion]. [Citations.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) While, however, we defer to the court's factual findings, " '[w]e exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' " (*Robey v. Superior Court, supra*, 56 Cal.4th at p. 1223.)

## C.   *Analysis*

We focus on the events between the time Officer McCready first spotted Lottice walking on the street and when Lottice disclosed he was on parole.[4] Applying the principles above, we find that Lottice was not detained at that point in the initial encounter. As the People note, the evidence shows that McCready pulled his patrol vehicle behind Lottice without blocking his path. McCready did not flash a spotlight on Lottice or activate the sirens of his vehicle. McCready, who was unaccompanied by other officers, simply walked up to Lottice, called out to him, and asked if he could speak with him. There is also no indication that McCready made any commands or touched or drew his weapon; indeed, his tone sounded neutral in the recording. In view of all of these circumstances, the trial court properly determined that the encounter prior to Lottice's volunteering he was a parolee was consensual and correctly denied the suppression motion.[5]

Despite these circumstances, Lottice contends McCready detained him when he first approached him, because a reasonable person in his position

---

[4] Lottice does not claim he was unlawfully detained after he disclosed he was on parole. At that point, McCready was permitted to detain Lottice for the purpose of conducting a parole search. (See *People v. Delrio* (2020) 45 Cal.App.5th 965, 970–971.)

[5] In light of our conclusion, we do not address Lottice's arguments why McCready lacked a reasonable suspicion of criminal activity prior to the initial encounter.

6

would not have felt free to leave. The allegedly intimidating circumstances were that McCready pulled his vehicle "behind [Lottice] as he was walking alone on the street," "immediately got out and started walking toward [Lottice]," "called out to him[,] and appeared to beckon [to him] . . . ." According to Lottice, "it is the imposed variance from course" that demonstrates he was detained.

To support these contentions, Lottice largely relies on *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*) and *People v. Jones* (1991) 228 Cal.App.3d 519 (*Jones*). Both cases are distinguishable.

In *Garry, supra*, 156 Cal.App.4th 1100, a uniformed police officer in a marked patrol car saw Garry standing next to a parked car at a street corner late at night. The officer put his patrol car's spotlight on Garry, immediately got out of his patrol car, and "all but ran directly at" Garry. (*Id.* at pp. 1103–1104, 1112.) Looking nervous, Garry started walking backward, pointed to a nearby house, and said, " ' "I live right there." ' " (*Id.* at p. 1104.) The officer nonetheless continued to approach, telling Garry, " 'Okay, I just want to confirm that,' " and asking if he was on probation or parole. When Garry said he was on parole, the officer detained him and found narcotics on his person. (*Ibid.*) The trial court denied Garry's suppression motion, finding there was no detention until after he disclosed he was on parole. (*Id.* at p. 1105.)

The appellate court reversed. (*Garry, supra*, 156 Cal.App.4th at p. 1113.) It found that the officer's spotlighting, rapid approach on foot, and immediate questioning about Garry's legal status, while disregarding Garry's indication he was merely standing outside his home, were so intimidating that a reasonable person would not have believed that he or she was free to leave. (*Id.* at pp. 1111–1112.) As such, the officer's "actions set an

7

unmistakable 'tone,' albeit largely through nonverbal means, 'indicating that compliance with the officer's request might be compelled.' " (*Id.* at p. 1112.)

This case is different. Here, there is no evidence that McCready suddenly illuminated Lottice with a police spotlight or that he "all but ran directly at" Lottice. (*Garry, supra*, 156 Cal.App.4th at p. 1112.) Rather, McCready parked his patrol car behind Lottice and walked over to him. Also, unlike in *Garry*, McCready did not begin by inquiring about Lottice's legal status. McCready instead "called out to [Lottice] and asked if [he] could speak with him." "Approaching a person [and] requesting to speak with him . . . do not transform an otherwise consensual encounter into a detention." (*People v. Coulombe* (2000) 86 Cal.App.4th 52, 57, fn. 3.)

Lottice makes much of the hand gesture McCready made, after exiting his vehicle, that was shown in the video, asserting, as in *Garry*, that McCready "appear[ed] to beckon" to him. Lottice, however, concedes that McCready testified that the hand movement shows he was reaching for the lapel light above his body camera. The trial court reasonably credited McCready's testimony, and we decline Lottice's invitation to resolve any credibility issues or evidentiary conflicts in his favor. (*People v. Zamudio, supra*, 43 Cal.4th at p. 357.) This case therefore does not involve the "more aggressive . . . and intimidating actions" that were present in *Garry*. (*Garry, supra*, 156 Cal.App.4th at p. 1112.)

*Jones, supra*, 228 Cal.App.3d 519 is similarly inapposite. There, Jones "was standing on the sidewalk with two other men when he was suddenly confronted with a marked police car pulling across the street toward him." (*Id.* at p. 523.) "The car then parked diagonally against traffic a mere 10 feet away. When [Jones] began to leave, Officer Burns got out from the car and said something like, ' "Stop. Would you please stop." ' " (*Ibid.*) The court

explained: "We believe the coercive effect of Burns's conduct was clear. A reasonable man does not believe he is free to leave when directed to stop by a police officer who has arrived suddenly and parked his car in such a way as to obstruct traffic. Clearly, [Jones] was detained." (*Ibid*.)

Here, in contrast, there is no indication McCready used his patrol vehicle to assert his authority or block Lottice's path. McCready parked his vehicle in a store's parking lot behind Lottice. "Certainly, an officer's parking behind an ordinary pedestrian reasonably would not be construed as a detention." (*People v. Franklin* (1987) 192 Cal.App.3d 935, 940.) Also, nothing in the record shows that McCready commanded Lottice to stop. Instead, McCready called out to Lottice and asked if he could speak with him. (See *In re Manuel G., supra*, 16 Cal.4th at p. 821 ["a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions"].)

Indeed, Lottice concedes in his reply brief that "there might have been no overt physical intimidation" during his initial encounter with McCready. Citing *Garry* and *Jones*, Lottice nonetheless argues that the fact he was "altered from his course prior to volunteering his parole status" amounted to his detention. Neither case establishes that circumstance, without more, constitutes a detention.

Other circumstances that occurred during the initial encounter, such as when McCready stated Lottice looked nervous or asked him to keep his hands out of his pockets, did not transform it into a detention. True, "questions of a sufficiently accusatory nature may by themselves be cause to view an encounter as a nonconsensual detention." (*People v. Lopez* (1989) 212 Cal.App.3d 289, 292, citing *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790–791 [consensual encounter turned into detention when officer told

defendant he was conducting a narcotics investigation and " 'had received information that he [defendant] would be arriving today from Florida carrying *a lot of drugs*' " (some italics omitted)].) But, unlike in *Wilson*, McCready's comment about Lottice's nervous demeanor was not a specific accusation of a crime under investigation. (See *People v. Lopez, supra*, 212 Cal.App.3d at p. 293 [no detention where questions asked by officers, while "somewhat accusatory, . . . were brief, flip, and, most importantly, did not concern criminal activity"].)

Likewise, McCready's request to Lottice to keep his hands out of his pockets did not make the encounter a detention. "Such a request, an *asking*, reasonably cannot be construed as a show of authority to transform the encounter into a detention." (*People v. Franklin, supra*, 192 Cal.App.3d at p. 942.)

Finally, we reject Lottice's argument that "whether it would be reasonable to ignore a police officer and walk away despite his calling to you is intrinsically tied to any individual's history with the police. Anyone with such a history will be more likely to experience a show of authority from what might be an innocuous request were it to come from a non-officer." Lottice is mistaken because, as he acknowledges, "the Fourth Amendment requir[es] an objective test . . . ." Therefore, Lottice's "subjective belief [is] irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*In re Manuel G., supra*, 16 Cal.4th at p. 821.) Moreover, "the 'reasonable' person test presupposes an *innocent* person." (*Florida v. Bostick* (1991) 501 U.S. 429, 438.)

In sum, we conclude the trial court properly found no detention occurred prior to McCready's learning that Lottice was on parole. Accordingly, the court did not err in denying Lottice's suppression motion.

10

## DISPOSITION

The judgment is affirmed.

_____

Jackson, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Wiseman, J.*

A157601/*People v. Joshua Wayne Lottice*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.